IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ARTHUR CARR,

        Plaintiff,                No. CIV S-09-0826 GGH P

    vs.

H. HER, et al.,                    ORDER AND

        Defendants,        FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' July 14, 2009, motion to dismiss for failure to exhaust administrative remedies.  For the following reasons, the court recommends that defendants' motion be denied.

        42 U.S.C. § 1997e(a) provides that, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Plaintiff  was required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."  Woodford v. Ngo, 548 U.S. 81, 88, 126 S.Ct. 2378 (2006). The California prison system's requirements "define the boundaries of proper exhaustion."  See Jones

1    v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910 (2007).

2           In order for California prisoners to exhaust administrative remedies, they must

3    proceed through several levels of administrative appeal:  1) informal resolution, 2) formal written

4    appeal on a CDC 602 inmate appeal form, 3) second level appeal to the institution head or

5    designee, and 4) third level appeal to the Director of the California Department of Corrections.

6    Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, §

7    3084.5).  A final decision from the Director's level of review satisfies the exhaustion

8    requirement.  Id. at 1237-38.

9           "The California Code of Regulations provides that an inmate must submit an

10   appeal within fifteen working days of the event or decision being appealed, but the appeals

11   coordinator is only permitted to reject an appeal if '[t]ime limits for submitting the appeal are

12   exceeded and the appellant had the opportunity to file within the prescribed time constraints.'

13   Cal.Code Regs. tit. 15 §§ 3084.6(c) and 3084.3(c)(6) (emphasis added)."  Marella v. Terhune,

14   568 F.3d 1024, 1027 (9th Cir. 2009).   "The California Department of Corrections and

15   Rehabilitation Operating Manual directs the appeals coordinator to 'ensure that the inmate or

16   parolee had, in fact, the opportunity to file in a timely manner.' Section 54100.8.1."  Id.

17          In Booth v. Churner, 121 S. Ct. 1819 (2001) the Supreme Court held that inmates

18   must exhaust administrative remedies, regardless of the relief offered through administrative

19   procedures. 121 S. Ct. at 1825.  Therefore, inmates seeking money damages must completely

20   exhaust their administrative remedies.  42 U.S.C. § 1997e(a) provides that no action shall be

21   brought with respect to prison conditions until such administrative remedies as are available are

22   exhausted.  McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).

23          In order to put defendants' motion in context, the court will summarize plaintiff's

24   claims.  This action is proceeding on the original complaint filed March 25, 2009.  Plaintiff, who

25   is African American, alleges that on March 10, 2008, he was attacked by a white inmate at

26   California State Prison-Solano (CSP-Solano).  Just prior to plaintiff being stabbed, a white

2

1    inmate used a weapon to cut a black inmate standing next to plaintiff.  During this initial attack,

2    defendants Her and Solarzano used pepper spray on plaintiff, the black inmate and the two white

3    inmates.  Defendants ordered the inmates to get down on the ground.

4           While the inmates were on the ground, defendant Her walked away.  Immediately

5    after this, plaintiff felt a stinging sensation in his back.  Plaintiff had been cut by one of the white

6    inmates.  On March 21, 2008, plaintiff was placed in the Intensive Mental Health Unit because

7    he had been suffering nightmare and suicidal thoughts.  On March 29, 2008, plaintiff was

8    released to administrative segregation.  He then received pain and sleeping pills as well as

9    psychotropic medication.  Plaintiff alleges that defendants violated the Eighth Amendment by

10   failing to protect him when they stepped away while he was on the ground, giving the white

11   inmate the opportunity to stab him.

12          In the motion to dismiss, defendants state that plaintiff did not exhaust

13   administrative remedies as to the claims raised in this action.  Defendants state that between the

14   date of the incident (March 10, 2008) and when plaintiff filed this action (March 25, 2009),

15   plaintiff submitted one grievance that was accepted for a Director's Level review.  Motion to

16   Dismiss, Grannis declaration.  This grievance was a group grievance signed by several inmates,

17   including plaintiff, and concerned an issue under the Americans with Disabilities Act.  Id.,

18   Exhibit 1.

19          Defendants state that from March 10, 2008, through March 25, 2009, plaintiff

20   submitted six grievances that were accepted for formal level review at CSP-Solano and no

21   grievances that were accepted for review at Folsom Prison.[1]  Motion to Dismiss, declarations by

22   Cervantes and Casey.  The six grievances accepted for review at CSP-Solano did not concern the

23   issues raised in the instant action.  Cervantes declaration.

24   \\\\\

25   _____

26       [1]   Plaintiff was housed at CSP-Solano at the time of the incident but later transferred to
     Folsom Prison.

In his opposition, plaintiff argues that on May 5, 2008, he filed a grievance regarding the March 10, 2008, incident but it was denied as untimely.  Plaintiff argues that he could not file timely appeals because he was being treated with sleeping pills and psychotropic medication.  Plaintiff also argues that he did not discover that his injuries occurred as a result of defendants' conduct until April 30, 2008.

In a declaration submitted in support of the opposition, plaintiff alleges that on March 21, 2008, he was confined in "CTC" for mental evaluation.  During that time, he took Vistoril (sleeping medication) twice a day.  On March 29, 2008, he was returned to ad seg.  While in ad seg, he continued to take Vistoril twice daily until May 4, 2008.  At that time, he was reduced to one Vistoril per day.  Plaintiff alleges that while on the sleeping medication, he slept throughout the day and night.  Plaintiff alleges that he could not focus during that time.

In his declaration submitted in support of his opposition, plaintiff alleges that from March 29, 2008, to May 1, 2008, he was aware that he had been slashed by a white inmate, but did not know that defendants had failed to protect him.  Plaintiff states that on or about the second week of April, defendant Solozano interviewed plaintiff for property inventory.  During the inventory, plaintiff asked defendant what had happened.  Defendant responded that he had saved plaintiff's life and that he chased down J.C. and pepper-sprayed him.   In other words, defendant did not admit that plaintiff was injured after defendants walked away while he was on the floor.

In his declaration, plaintiff states that on April 30, 2008, inmate Pogue told plaintiff that he had been cut while lying down.  Attached to the opposition as Exhibit C is the declaration of inmate Pogue.  He states that inmate Rain witnessed the incident and told him that plaintiff was attacked by a white inmate after the officer walked away, leaving plaintiff unguarded on the ground.  Opposition, Exhibit C.  Inmate Pogue states that he discussed this "unfortunate situation" with plaintiff.  Id.  After receiving this information, on May 5, 2008, plaintiff submitted an inmate appeal regarding the incident.  In this appeal, plaintiff did not

4

1   address why he did not file it earlier.  On May 8, 2008, the appeal was rejected as untimely.

2          Attached as exhibits to the complaint are copies of the appeals plaintiff filed

3   regarding the incident.  On May 8, 2008, plaintiff's first grievance, filed May 5, 2008, was

4   rejected as untimely.  Complaint, Exhibit B.  The appeal response stated,

5          There has been too great a TIME LAPSE between when the action or decision
       occurred and when you filed your appeal with no explanation of why you did not
6       or could not file in a timely fashion.  Time limits expired per CCR 3084.6(c).
       Therefore, if you would like to pursue this matter further, you must submit an
7       explanation and supporting documentation explaining why you did not or could
       not file your appeal timely.

8

9   Complaint, Exhibit B.

10          The response further stated, "You were allegedly attacked on 03/10/08.  You

11  should have submitted CDC 602 within 15-working days from date of occurrence.  You may file

12  a separate appeal to solely request release from Ad-Seg."  Id.

13          On May 9, 2008, plaintiff submitted a response to the dismissal of his appeal.

14  Complaint, Exhibit C.  In this response, plaintiff stated that he could not file a timely appeal

15  because he had been given different medications, as well as sleeping pills.  Id.  Plaintiff stated

16  that on May 1, 2008, he told "psych" that he could not perform daily activities because he was

17  under the influence of the sleeping pills, and sleeping day and night.  Id.  Plaintiff stated that on

18  or around May 3, 2008, he was reduced to one dose of sleeping pills.  Id.

19          On May 20, 2008, plaintiff's May 9, 2008, appeal response was rejected as

20  untimely.  Complaint, Exhibit D.  The response also stated, "You should have filed an appeal

21  within 15-working days from released [sic] from Ad-Seg."  Id.

22          On May 29, 2008, plaintiff submitted a response to the May 20, 2008, rejection of

23  his appeal.  Complaint, Exhibit E.  In this document, plaintiff stated that he could not file a

24  timely appeal because he was incapacitated.  Plaintiff also stated that "facts relating to how I was

25  injured came via inmate Leon Q. Pogue on April 30, 2008."  Id.  Plaintiff also stated that he had

26  not been released from ad seg.  Id.

1          On June 5, 2008, plaintiff's May 29, 2008, appeal response was rejected as

2    untimely.  Complaint, Exhibit F.  This response further stated,

3               Thank you for clarification letter dated 5/28/08.  Records reflect you were re-
                housed from Bldg. 8 to CTC 3/10/08.  3/12/08 to Bldg. 9 Ad-Seg, 3/15/08 to
4               Bldg. 10 Ad-Seg, 3/21/08 to CTC, and 3/29/08 to Bldg. 10 Ad-Seg.  You should
                have filed CDC 602 within 15 working days from 3/29/08.
5

6    Id.

7          On June 10, 2008, plaintiff filed a new grievance claiming that prison officials

8    had improperly dismissed his appeal regarding the March 10, 2008, incident as untimely.

9    Complaint, Exhibit G.  On June 18, 2008, this appeal was denied as duplicative of the earlier

10   appeal.  Complaint, Exhibit H.  The response also states that the earlier appeal was rejected as

11   untimely.  Id.

12         In the reply to the opposition, defendants argue that plaintiff's claim that he could

13   not prepare a timely grievance because he was taking sleeping pills twice a day is not supported

14   by the record.  Defendants also argue that plaintiff had sufficient information to file his grievance

15   within fifteen days of the incident.

16         As discussed above, the California Department of Corrections and Rehabilitation

17   Operating Manual directs the appeals coordinator to "ensure that the inmate or parolee had, in

18   fact, the opportunity to file in a timely manner." Section 54100.8.1."  In the instant case, none of

19   the responses to plaintiff's explanations as to why he could not file a timely grievance addressed

20   the reasons given.  Rather than responding to plaintiff's claims that he was taking sleeping pills

21   and had only recently learned of defendants' involvement, the responses advised plaintiff that he

22   should have filed his appeal after his release from ad seg.  By ignoring plaintiff's facially

23   legitimate reasons, the Appeals Coordinator did not ensure that plaintiff had an opportunity to

24   file his appeal in a timely manner.

25         Despite the failure of the Appeals Coordinator to address plaintiff's reasons for

26   filing the grievance on May 5, 2008, the court finds that because plaintiff claims he did not have

1 knowledge of defendants' involvement until April 30, 2008, his use of sleeping pills did not

2 prevent him from filing a grievance within fifteen working days of the incident.

3        The court disagrees with defendants' argument in the reply that plaintiff had

4 sufficient knowledge of their involvement immediately following the attack. According to

5 plaintiff, he was not aware that defendants walked away before he was attacked. Without this

6 specific fact, plaintiff had no grounds on which to file an administrative appeal against

7 defendants.

8        In the reply, defendants argue that plaintiff admitted in his opposition that he

9 suspected defendants were responsible for the attack. While plaintiff may admit that he

10 suspected defendants' involvement, he claims not to have known exactly what they did that

11 contributed to the attack. Until he was informed by inmate Pogue that defendants had walked

12 away, he had no facts on which to allege defendants' involvement. Plaintiff could not have filed

13 a grievance against defendants without this information.

14        Defendants also fault plaintiff for not mentioning in the response to the first

15 dismissal of his appeal as untimely that he could not have filed a timely grievance because he did

16 not know the facts until April 30, 2008. Defendants go on to argue that in the response to the

17 second dismissal of his appeal as untimely plaintiff merely stated that he received the facts on

18 April 30, 2008.

19        In the response to the second dismissal of his appeal as untimely, plaintiff stated

20 that the "facts relating to how I was injured came via inmate Pogue on April 30, 2008." This

21 statement should have put the Appeals Coordinator on notice that plaintiff was claiming that he

22 could not file an appeal sooner because he did not know the facts until April 30, 2008.

23 Moreover, the responses to both of plaintiff's documents explaining why he did not file the

24 appeal sooner failed to address the reasons given by plaintiff. For this reason, plaintiff's failure

25 to raise the issue that he had only recently discovered defendants' involvement in his response to

26 the first dismissal of his appeal as untimely would not have made any difference.

1    For the reasons discussed above, the court finds that plaintiff did not have an
2    opportunity to file his appeal within fifteen working days of the March 10, 2008, incident
3    because he did not know the facts regarding defendants' involvement within that time.  Plaintiff
4    became aware of the facts regarding defendants' involvement on April 30, 2008.  Because he
5    filed his grievance within fifteen working days of April 30, 2008, he has exhausted his
6    administrative remedies.

7    Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court shall assign
8    a district judge to this action; and

9    IT IS HEREBY RECOMMENDED that defendants' July14, 2009, motion to
10    dismiss (# 13) be denied.  If this recommendation is adopted by the district judge, the defendants
11    will be directed to file an answer within thirty days of adoption.

12    These findings and recommendations are submitted to the United States District
13    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
14    days after being served with these findings and recommendations, any party may file written
15    objections with the court and serve a copy on all parties.  Such a document should be captioned
16    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
17    shall be served and filed within ten days after service of the objections.  The parties are advised
18    that failure to file objections within the specified time may waive the right to appeal the District
19    Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20    DATED: 10/28/09

/s/ Gregory G. Hollows
21    _____
22    UNITED STATES MAGISTRATE JUDGE

23    carr826.mtd

24

25

26

8